Kevin T. Lafky, OSB #852633
klafky@lafky.com
LAFKY & LAFKY
429 Court Street NE
Salem, OR 97301
Tel: (503)585-2450
Fax: (503)585-0205
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

| | |
|---|---|
| MARTIN G. CHILDS, | Case No. 6:20-cv-01610-MK |
| Plaintiff, | AMENDED COMPLAINT |
| | False Claims Act Qui Tam Whistle blower |
| v. | Claim 31 U.S.C. 3729-3733 |
| SERVICE EMPLOYEES INTERNATIONAL UNION; | (Jury Trial Requested; Not Subject to Mandatory Arbitration) |
| | Requested Relief: $95,428,906.00 |
| Defendant. | |

Plaintiff Martin G. Childs ("Plaintiff") alleges, at all material times herein:

## PARTIES

1.

Plaintiff is a resident of Lane County, Oregon.

2.

Defendant Service Employees International Union ("Defendant") is a labor union that represents workers all across the United States, Canada and Puerto Rico.

**Page 1 of 8 - COMPLAINT**

## JURISDICTION

### 3.

Plaintiff asserts a claim for a violation of the False Claims Act under 31 U.S.C. § 3729(a)(1)(A), acting as a private citizen bringing an action under U.S.C. § 3730(b)(1). Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction, and brought pursuant to a claim under 31 U.S.C. § 3730(b)(1) in the name of the Government.

## VENUE

### 4.

Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred while Plaintiff worked for Defendant in Salem, Oregon while living in Lane County, Oregon and throughout the State of Oregon. Defendant represents employees operating in Lane County, Oregon and is a national organization operating in various different states, including Oregon.

## FACTUAL ALLEGATIONS

### 5.

Plaintiff worked for Defendant as the Finance Director when he was eventually pressured into an early retirement by Defendant in June of 2019. Plaintiff was identified as an ethical non-follower when he had served as the Ethics Liaison, in addition to the Finance Director position, and had noted a discrepancy in the amount paid as severance by the Executive Director at the time, Heather Conroy, to the outgoing political director. Not long after this was noted, Defendant's Headquarters Executive Board voted to exclude Finance Directors from serving as the Ethics Liaison.

6.

Plaintiff's position working for Defendant allowed him to be privy to much of the following information and put him in the special position to understand what was transpiring between SEIU Local 775 and SEIU Local 503 which are the two chapters that are the root of these claims. SEIU Local 775 is of particular importance as they were the chapter to begin the practices to be discussed in this complaint, with SEIU Local 503 to implement 775's practices roughly nine years later. Additionally, SEIU Local 503 was known throughout the union as a chapter in which new ideas could be tested for rollout at other chapters.

7.

In an effort to better care for employees and maintain membership numbers, SEIU Local 775 began establishing health insurance trust funds for home care employees in the State of Washington in 2005. These trusts were created with the intent of providing low-cost health insurance networks to home care workers, which was funded by Medicaid. In 2013, SEIU Local 503 followed suit and with state legislative approval, there were two health insurance benefits trusts for their home care workers set up for SEIU Local 775 and 503.

8.

As is required for establishing these trusts, a Board of Directors was to be created for the oversight of trust resources. The agreements creating the trusts were signed by the Defendant and the State and there are specific provisions addressing the intended make-up of the Board of Directors. These boards do not meet the proper conditions as fiduciary control for both trusts are maintained entirely by Defendant and does not incorporate representatives from the respective

Page 3 of  8 - AMENDED COMPLAINT

States. This lack of state oversight has greatly contributed to the conduct defrauding the government by improper appropriation of funds.

9.

These funds were utilized to offset expenses that other chapters had paid through union dues and there was a substantial increase in Medicaid funding going to Defendant as an alternative revenue stream. This was directly contrary to the Trusts' intended purpose.

10.

As an additional effort to gain Medicaid funding and through careful lobbying efforts in both states, there had been an increase in the requirements for training for home care workers, culminating in the creation of training trusts that were used to support and train health care workers. The legislation that made this possible was pioneered and pushed forward by SEIU Local 775. SEIU Local 775 had lobbied for a mandate requiring a training partnership model and the contract funding formula described in the bill included state-controlled Medicaid contributions to the training partnership. For SEIU Local 775, lobbying also allowed them to push for more stringent training guidelines and the SEIU Healthcare NW Training Partnership was created to fulfill these requirements. The training trust that utilized Medicaid was created to help fund the training contracts Defendant had attained to meet the new requirements. These trusts served the added benefit of allowing Defendant access to worker's private contact information to use in call centers as it controlled both the trust and the call center to utilize the information.

11.

Prior to the legislation passed as articulated above, there was  no billing of union administrative support from SEIU Local 775 to the training trust or the health care benefits trust.

**Page 4 of  8 - AMENDED COMPLAINT**

Starting 2010, billing for both the healthcare trust and training trusts rose substantially. This culminated in roughly a $2 million increase in billing to the trusts and revenue from Medicaid funding to SEIU Local 775 over the course of nine years.

12.

This is the model followed by SEIU Local 503 nearly nine years later, with its first substantial increase in Medicaid revenue from these trusts occurring in 2019. This occurred after SEIU Local 503 had successfully lobbied for a similar set of requirements found in Washington, allowing for the Medicaid funded training trusts to be established. Other SEIU chapters had utilized union dues to pay for the expenses SEIU Local 775 and 503 were paying through the newly acquired Medicaid revenue. This funding, offset with Medicaid funds, resulted in substantial losses to the government at the benefit of Defendant. By 2019, SEIU Local 775 had billed roughly $2,452,578 for Medicaid funding to cover expenses from the healthcare trust alone. SEIU Local 503 billed $199,111 in total as of 2020 for the healthcare trust. When including the training trusts, these amounts increase to $20,046,600 for SEIU Local 775 and $1,898,901 for SEIU Local 503.

13.

To attain the access to funding articulated above, SEIU Local 503 lobbied to create a training trust structure similar to SEIU Local 775's to expand their access to Medicaid. This included getting the state legislature to pass a bill for newly imposed training requirements with the goal to receive additional Medicaid funding. Presumably, their goal was to submit a bid to provide administrative support for a fee, submitted that to its training trust which it controlled, and gained access to Medicaid funds to cover this fee, as well as offset expenses they were already paying for, all while gaining a new source of Medicaid revenue.

**Page 5 of  8 - AMENDED COMPLAINT**

14.

This access to Medicaid funds was also utilized in the Defendant's acquisition of The Forum building in Portland to be used as a call center, among other things. Defendant looked to acquire a 55,000 square foot building with land space that could be sold to developers in one of Portland's most sought after districts. To ensure it received this building, Defendant wired $300,000 in an earnest money deposit and an additional $200,000 from one of SEIU Local 503's health benefit trusts. As the deal was falling through and in an attempt to salvage the deal, Defendant located another bank willing to support the purchase and used cash being held by the Homecare Benefit Fund Supplemental Trust, totaling $7,688,346.50, to support the transaction. This was one of the trusts set-up in 2013 to provide home care workers with health insurance and both trusts contained solely Medicaid dollars. This was not done in an attempt to benefit the participants and only benefitted Defendant.

15.

The purchase of The Forum building described above was not properly disclosed and was not recorded as a loan for the use of substantial Medicaid funds. Improvements to the building were also made and came out of Medicaid funding resources, totaling $1,972,454. This building could result in other alternative revenue streams as well, purchased with Medicaid funding.

16.

By 2019, SEIU Local 775 had billed roughly $20,046,600 of Medicaid funding between both the healthcare and training trusts, not including what was pulled for the 2020 calendar year by the chapter. By 2020, SEIU Local 503 had billed roughly $1,898,901 to both trusts, along with the amount articulated above for the purchase of the Forum Building. Through the improper use of the

**Page 6 of  8 - AMENDED COMPLAINT**

healthcare and training trusts as articulated above, Defendant defrauded the government in an amount at or around $31,806,302, not including whatever amount was pulled for the 2020 calendar year. These trusts were created for the sole benefit of participants and utilized illegal practices to gain access to Medicaid funds to offset its own expenses.

## False Claims Act Qui Tam Whistle Blower Claim
## 31 U.S.C. § 3729

17.

Plaintiff re-alleges and incorporates paragraphs 1 through 16 herein by this reference.

18.

According to 31 U.S.C. § 3729, Any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval is liable to the government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, plus 3 times the amount of damages which the Government sustains because of the act of that person.

19.

Although Plaintiff is not the government, a person may bring a civil action for a violation of 31 U.S.C. § 3729(a)(1)(A) for the person and for the government's benefit. The action shall be brought in the name of the Government. Plaintiff shall be entitled to between 25-30% of the proceeds recovered, depending on government involvement. 31 U.S.C. § 3730(d)(1)-(2). As Defendant defrauded the government of $31,806,302. According to 31 U.S.C. § 3279(a)(1), the damages to be received by the government are multiplied by 3, resulting in $95,418,906 plus the civil penalty.  The statutory scheme allows for plaintiffs to recover 30% of the damages sustained,

depending on government participation in the suit. Pursuant to 31 U.S.C. § 3730(d)(1)-(2), Plaintiff

shall also be entitled to receive his reasonable attorneys fees and costs should he prevail.

20.

Through the use of the trusts set-up by Defendant through Local SEIU 775 and 503, it has

been able to increase its revenue from Medicaid funds substantially and has utilized this to benefit

itself in direct violation of the trusts purpose. As Defendant used these funds to profit from the

government and purchase income-producing property, it has continually presented false claims for

payment.

WHEREFORE, Plaintiff requests the following for his claims for relief:

1. For Plaintiff's First Claim of Relief against Defendant: The government is to

receive a total $95,418,906, which is 3 times the amount of damages sustained due

to Defendant's conduct. Pursuant to 31 U.S.C. § 3730(d)(1)-(2), Plaintiff is entitled

to receive up to 30% of this amount, depending on government participation;

2. Plaintiff's reasonable attorneys fees and costs pursuant to 31 U.S.C. § 3730(d)(1)-

(2); and

3. Any other relief this court deems just and equitable.

DATED this 15th day of January, 2020.

> /s/ Kevin T. Lafky
> Kevin T. Lafky, OSB#852633
> LAFKY & LAFKY
> 429 Court Street NE
> Salem, OR 97301
> (503)585-2450
> Of Attorney for Plaintiff

**Page 8 of  8 - AMENDED COMPLAINT**