SCOTT A. KRONLAND (*pro hac vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: skronland@altber.com
Pronouns: he/him

JASON M. WEYAND, OSB No. 014777
TEDESCO LAW GROUP
1316 NE Broadway Street, Unit A
Portland, OR 97232
Telephone: (866) 687-6015
Facsimile: (503) 210-9847
E-mail: jason@tlglabor.com
Pronouns: he/him

*Attorneys for Defendant Service
Employees International Union*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MARTIN G. CHILDS, | Case No. 6:20-cv-01610-MK |
| Plaintiff, | **DEFENDANT SERVICE EMPLOYEES INTERNATIONAL UNION'S MOTION TO DISMISS** |
| v. | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, | **Pursuant to Fed. R. Civ. P. 12(b)(6)** |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

L.R. 7-1 CERTIFICATION ................................................................................. 1

MOTION ............................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

      1.   Plaintiff's allegations ..................................................................... 2

      2.   Procedural history .......................................................................... 5

LEGAL STANDARD .......................................................................................... 5

ARGUMENT ...................................................................................................... 6

      I.    Plaintiff does not allege facts to show the necessary elements of a
           False Claims Act claim ................................................................... 7

      II.   Plaintiff does not allege facts to show that SEIU International was
           responsible for the alleged False Claims Act violation .................. 9

      III.  This case should be dismissed with prejudice ................................ 11

CONCLUSION ................................................................................................... 11

CERTIFICATE OF COMPLIANCE ................................................................... 13

CERTIFICATE OF SERVICE ............................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) .................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................5

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ..........................................6, 11

*Cafasso General Dynamics C4 Systems, Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ............................................6, 7

*Carbon Fuel Co. v. Mine Workers*,
    444 U.S. 212 (1979)............................................................9

*Carr v. Alvarez*,
    2021 WL 6927466 (D. Or. Nov. 22, 2021).............................11

*Cassity v. Fedloan Servicing*,
    2022 WL 2110754 (D. Or. Apr. 28, 2022) .............................11

*Coronado Coal Co. v. United Mine Workers of America*,
    268 U.S. 295 (1925)..........................................................10

*Diep v. Durst-Pro-USA, Inc.*,
    2006 WL 1788175 (D. Or. June 23, 2006) ............................11

*Godecke v. Kinetic Concepts, Inc.*,
    937 F.3d 1201 (9th Cir. 2019) ...........................................5, 6

*Mine Workers v. Coronado Coal Co.*,
    259 U.S. 344 (1922)............................................................9

*Moore v. Local 569 IBEW*,
    989 F.2d 1534 (9th Cir. 1993) ..........................................9, 10

*Ebeid ex. rel. U.S. v. Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ......................................1, 6, 7, 8

*Winter ex rel. United States v. Gardens Regional Hospital*,
    953 F.3d 1108 (9th Cir. 2020) ..............................................7

*United States v. United Healthcare Insurance Co.*,
    848 F.3d 1161 (9th Cir. 2016) ........................................................................6, 10

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..............................................................................6

**Statutes**

31 U.S.C. §§ 3729–3733 ................................................................................ *passim*

31 U.S.C. § 3729(a)(1)(A) ...............................................................................1, 5, 7

31 U.S.C. § 3729(b)(2)(A) ........................................................................................7

**Rules**

Fed. R. Civ. P.
    Rule 9(b) ...............................................................................................5, 6, 8, 11
    Rule 12(b)(6).............................................................................................................1

## L.R. 7-1 CERTIFICATION

On May 9, 2022, counsel for Defendant Service Employees International Union ("SEIU International") conferred in good faith with counsel for Plaintiff Martin Childs about the subject of this motion. The issue could not be resolved without the assistance of the Court.

## MOTION

Defendant SEIU International moves the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss with prejudice Plaintiff's Second Amended Complaint for failure to state a claim for relief. In support of this motion, SEIU International relies upon the Memorandum of Points and Authorities below, the complete files and records of this case, and such other and further matters as the Court may properly consider when this motion is heard.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff's Second Amended Complaint asserts a single cause of action against SEIU International for alleged violation of 31 U.S.C. §3729(a)(1)(A), which is part of the False Claims Act. *See generally* 31 U.S.C. §§3729–3733. Under 31 U.S.C. §3729(a)(1)(A), a person violates the False Claims Act by "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval" that results in the loss of federal government funds. Claims for violation of the False Claims Act must be pled with particularly. *Ebeid ex. rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Plaintiff's Second Amended Complaint does not even come close to meeting this standard.

Plaintiff does not identify with particularity any "claim[s] for payment or approval" that allegedly were made, does not explain what those claims asserted, does not explain why those claims were false or fraudulent, and does not identify who submitted those claims. Plaintiff also

fails to distinguish SEIU International from its affiliated local unions, which are separate entities. Plaintiff does not allege facts to show that SEIU International itself submitted any false claims or allege facts to show that the local unions were acting as agents of SEIU International in submitting false claims.  Plaintiff also does not allege that SEIU International knew that those unidentified claims were false.  Accordingly, the Second Amended Complaint should be dismissed.  Because Plaintiff already has amended his complaint twice and further amendment would be futile, the Court should dismiss this case with prejudice.

## BACKGROUND

### 1.  Plaintiff's allegations

Defendant SEIU International is an international union headquartered in Washington, D.C.  There are approximately two million SEIU members throughout the United States, organized in local affiliates with their own constitutions, bylaws, officers, and executive boards. *See* Second Amended Complaint ("SAC") ¶4.  Plaintiff served as the Finance Director for SEIU Local 503, an Oregon-based local union affiliated with SEIU International, from September 2009 to June 2019.  SAC ¶5.  Plaintiff alleges that he was "pressured into an early retirement" from his job with SEIU Local 503.  SAC ¶5.

Plaintiff alleges that, at some point, SEIU International's leaders discussed with "great concern" Supreme Court decisions that could negatively impact dues revenue.  SAC ¶6.  Plaintiff alleges that their concern was that unions would lose access to "the contact data of each dues payer," which created a "problem" because the unions would be "unable to obtain fresh contact information to encourage individual dues payments."  SAC ¶6.  According to Plaintiff, it was "at that time that an alternative path began to move forward to gain access to worker data through related party trusts the Defendant's unions controlled."  SAC ¶6.  The Second Amended

Complaint refers to trusts set up by SEIU Local 503 (headquartered in Oregon) and SEIU Local 775 (headquartered in Washington State).  SAC ¶¶4, 7.

Plaintiff alleges that SEIU Local 775 has used trusts and ballot initiatives since 2010 to create "a pipeline… of Medicaid dollars flowing from their trusts to the union."  SAC ¶7. Plaintiff alleges that SEIU Local 503 attempted to "duplicate" this model.  SAC ¶7.  Plaintiff alleges that SEIU Local 503 set up several trusts over the course of several years:  In 2013, two homecare health insurance trusts; in 2017, a building trust; and in 2018, a Training Partnership Trust.  SAC ¶8.

Plaintiff alleges that, in 2018, state legislation passed in Oregon which "mandated the state of Oregon … to set standards for required training of care providers while maximizing federal funding to pay for it."  SAC ¶8.  Plaintiff alleges that, after the Oregon Legislature passed the legislation, a contract "to develop the training curriculum and provide the training went to Local 503's training trust," and the work "would be funded with state-controlled Medicaid funds."  SAC ¶8.  Plaintiff alleges (without elaborating) that SEIU Local 503 "presumably" intended to use the training trust to "offset expenses they were already paying for, all while gaining a new source of Medicaid revenue."  SAC ¶13.

Plaintiff alleges that SEIU Local 503 also bought a building that could be used as a call center, SAC ¶11, and was ultimately awarded a contract for "call center work which was to be paid for by the training trust."  SAC ¶8.  Plaintiff alleges that "Local 503 did not have the funds to purchase a building… so they pulled funds from one of the homecare health insurance trusts… which is funded by the state with Medicaid funds."  SAC ¶11.  "The total amount pulled from this trust account… was $7,888,347."  SAC ¶11.  Plaintiff alleges that Local 503 has since received an additional $2,769,302 from the health insurance trusts to pay for building

improvement expenditures.  SAC ¶11.  Plaintiff later alleges that only $1,972,454 was used for building improvements.  SAC ¶¶15, 16.

Plaintiff alleges that management of and responsibility for the health insurance trusts is shared equally among five SEIU Local 503 trustees and five trustees representing the State of Oregon.  SAC ¶11.  Plaintiff alleges that the payments for the building and the building improvements are listed as an investment on the trust's tax report.  SAC ¶11.  Plaintiff, however, takes issue with this characterization because the building "is a non-liquid asset… not to mention the risk in real estate investing seen since 2008."  SAC ¶11.  Plaintiff alleges that the purchase of the building "was not properly disclosed and was not recorded as a loan for the use of substantial Medicaid funds."  SAC ¶15.  Plaintiff alleges that Local 503's purchase of the building "was not done in an attempt to benefit the participants [of the trust] and only benefitted Defendant."  SAC ¶14.

Plaintiff alleges that SEIU Local 503 billed roughly $1,898,901 to the healthcare and training trusts through 2020.  SAC ¶16.  Plaintiff alleges that SEIU Local 775 billed roughly $20,046,600 to trust funds through 2019.  SAC ¶16.  Plaintiff alleges that, through the "improper use of the healthcare and training trusts," Defendant SEIU International "defrauded the government" because it "utilized illegal practices to gain access to Medicaid funds to offset its own expenses."  SAC ¶16.  Plaintiff does not provide any details to show that SEIU International itself ever submitted any claims to the government or local trust funds.

Plaintiff alleges that SEIU International defrauded the government of $31,806,302, *see* SAC ¶16, but later alleges the amount is $41,784,736.  SAC ¶19.  This discrepancy is not explained.  Plaintiff alleges that when Defendant SEIU International "used these funds to profit from the government and purchase income-producing property, it has continually presented false

claims for payment." SAC ¶20. Plaintiff does not provide any details on when these alleged false claims for payment were submitted, who submitted them, to whom they were submitted, what they said, or why they were false.

### 2. Procedural history

Plaintiff filed the original Complaint in this action under seal on January 15, 2021. Dkt. 10. After the government declined to pursue the alleged False Claims Act claim, Dkt. 16, and the Complaint was unsealed, Plaintiff filed a First Amended Complaint on March 10, 2022. Dkt. 21. After Defendant SEIU International advised Plaintiff's counsel that it would move to dismiss the First Amended Complaint for failure to state a claim, Plaintiff received leave to file a Second Amended Complaint, which was filed on June 3, 2022. Dkt. 29. The Second Amended Complaint asserts a single cause of action against SEIU International for violation of 31 U.S.C. §3729(a)(1)(A).

### LEGAL STANDARD

A Rule 12(b)(6) motion should be granted if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Moreover, because Plaintiff's claim alleges a violation of the False Claims Act, his complaint "must not only be plausible, but pled with particularity under Rule 9(b)." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citations omitted); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "To satisfy Rule 9(b) [in a False Claims Act case], a pleading

Case 6:20-cv-01610-MK   Document 30   Filed 07/05/22   Page 10 of 18

must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso General Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1054-55 (9th Cir. 2011) (quoting *Ebeid*, 616 F.3d at 998); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  Because the False Claims Act is "geared primarily to encourage insiders to disclose information necessary to prevent fraud on the government," *Ebeid*, 616 F.3d at 999, plaintiffs "should have adequate knowledge of the wrongdoing at issue [and] should be able to comply with Rule 9(b).'"  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Wang v. FMC Corp.*, 975 F.2d 1412, 1419 (9th Cir. 1992)).

This heightened pleading standard serves two main purposes.  First, "Rule 9(b) requires that the circumstances alleged to constitute fraud be specific enough to give the defendant notice of the particular misconduct so that it can defend against the charge."  *Godecke*, 937 F.3d at 1208 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).  Second, Rule 9(b) serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."  *Bly-Magee*, 236 F.3d at 1018 (quoting *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)); *accord United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018); *United States v. United Healthcare Insurance Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).

## ARGUMENT

Plaintiff alleges that SEIU International violated the False Claims Act by "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval."

Page 6  Defendant SEIU International's Motion to Dismiss

31 U.S.C. §3729(a)(1)(A); SAC ¶3.  To make out a claim for violation of §3729(a)(1)(A), a plaintiff "must allege: '(1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing, (4) the government to pay out money or forfeit moneys due.'" *Winter ex rel. United States v. Gardens Regional Hospital*, 953 F.3d 1108, 1114 (9th Cir. 2020) (quoting *United States ex rel. Campie v. Gilead Scis., Inc*., 862 F.3d 890, 899 (9th Cir. 2017)).  Plaintiff's allegations fail to plead a plausible claim—much less to plead the claim with the heightened level of particularity required in False Claims Act cases.  First, Plaintiff does not plead facts that, even if assumed to be true, would establish the necessary elements of a §3729(a)(1)(A) violation.  Second, even if Plaintiff had alleged facts sufficient to show a violation of this statute, Plaintiff does not plead facts to show that SEIU International was responsible for any such violation.

## I.    Plaintiff does not allege facts to show the necessary elements of a False Claims Act claim

Plaintiff's Second Amended Complaint fails at the threshold—he does not allege with particularity facts to show that a false claim was made.  Under the False Claims Act, a "claim" means a "request or demand … for money … that (i) is presented to an officer, employee or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest."  31 U.S.C. §3729(b)(2)(A).  To meet the particularity requirement, Plaintiff is required to detail "the who, what, when, where, and how of the misconduct charged."  *Ebeid*, 616 F.3d at 998 (quoting *Vess*, 317 F.3d at 1106).  In addition, "the plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Id.* (citations omitted).

Plaintiff does none of this.  Plaintiff does not identify *what* claim was made, *who* made it, *why and how* it was false, *when* it was presented, *to whom* it was presented, and *what* payment of

government funds was made in response to the claim. General allegations that vaguely imply that something improper has occurred are not enough.

Plaintiff's allegations here are even more deficient than the allegations in *Ebeid*, which the Ninth Circuit held were not sufficient to adequately plead a False Claims Act claim. In *Ebeid*, the plaintiff alleged generally that the owner of a healthcare business had submitted claims for Medicaid reimbursement knowing that her employee physicians had a significant financial interest in the referral of the patients to a particular clinic, which violated state and federal laws. *Ebeid*, 616 F.3d at 1000–01. The plaintiff in *Ebeid* alleged that the businessowner "concealed and failed to disclose that the Clinic's physicians had a financial relationship to the [referral site]," and that the "referrals … were made by physicians who were employed by and whose livelihood depended upon [the businessowner]." *Id.* The Ninth Circuit held that these "general allegations—lacking any details or facts setting out the 'who, what, when, where, and how' of the 'financial relationship' or alleged referrals—are insufficient under Rule 9(b)." *Id.*

Here, Plaintiff likewise fails to plead "any details or facts" setting out the "who, what, when, where, and how." Instead, Plaintiff makes vague allegations about local trusts set up by two local unions that received funding from Medicaid, and then alleges that SEIU International "used these funds to profit from the government" and "has continually presented false claims for payment." SAC ¶20. These allegations are silent on what claims were submitted for payment, when they were submitted, to whom they were submitted, who submitted them, what they said, and why they were false. "This type of allegation, which… specifies no particular circumstances of any discrete fraudulent statement, is precisely what Rule 9(b) aims to preclude." *Cafasso*, 637 F.3d at 1057. As such, the Second Amended Complaint must be dismissed.

## II.    Plaintiff does not allege facts to show that SEIU International was responsible for the alleged False Claims Act violation

Plaintiff's Second Amended Complaint also must be dismissed because it does not allege

facts to show that Defendant SEIU International was responsible for the alleged False Claims

Act violation.  Plaintiff alleges that SEIU International "utilized illegal practices to gain access to

Medicaid funds to offset its own expenses," SAC ¶16, and "used these funds to profit from the

government and purchase income-producing property."  SAC ¶20.  But Plaintiff's specific

factual allegations—to the extent Plaintiff alleges any specific facts—describe only the alleged

conduct of SEIU Local 503 and SEIU Local 775.  Plaintiff does not allege facts that show that

SEIU International was responsible for running the local trust funds or submitting any claims for

payment.

The law is settled that international unions like SEIU International are *not* presumptively

liable for the alleged acts or omissions of affiliated local unions.  *See, e.g.*, *Mine Workers v.*

*Coronado Coal Co.*, 259 U.S. 344, 395 (1922).  Instead, an international union's responsibility

for the actions of one of its affiliated local unions is limited by the common law rules of agency.

*Carbon Fuel Co. v. Mine Workers*, 444 U.S. 212, 216-17 (1979) (noting "Congress' clear

statement of the limits of an international union's legal responsibility for the acts of one of its

local unions").  To "find the union liable 'it must be clearly shown… that what was done was

done by their agents in accordance with their fundamental agreement of association.'"  *Id.* at 217

(quoting *Coronado Coal Co. v. United Mine Workers of America*, 268 U.S. 295, 304 (1925))

(alterations in original).  Absent facts to show that the international union "instigated, supported,

ratified or encouraged the Local's activities or … the Local acted pursuant to its agreement with

the International, there [is] no agency relationship as a matter of law."  *Moore v. Local 569*

*IBEW*, 989 F.2d 1534, 1543 (9th Cir. 1993).

Here, Plaintiff alleges no facts to show that SEIU Local 503 or SEIU Local 775 were acting as agents of SEIU International when allegedly submitting false claims for payments. Rather, Plaintiff's passing references to SEIU International describe services offered by SEIU International to its local affiliates—putting on conferences, coordination of political efforts, reviewing year-end reports, and offering consultations on projects—that in no way demonstrate an agency relationship with regard to claims for payment submitted by local unions or local trust funds. *See* SAC ¶¶5, 12.

Plaintiff attempts to connect SEIU International to the local trusts by alleging that the Executive Director for SEIU Local 503 stated she had "worked with staff and attorneys for the Defendant during many conference calls prior to finalization of the purchase [of the building]." SAC ¶12. But this allegation of "conference calls" about a real estate purchase does not come close to "clearly show[ing]" that SEIU Local 503 "acted pursuant to [an] agreement" with SEIU International in buying the building, much less in submitting false claims for payment. *See Coronado Coal Co.*, 268 U.S. at 304; *Moore*, 989 F.2d at 1543.

Plaintiff alleges no facts whatsoever to show that SEIU International itself submitted or directed the submission of any false claims for payment or that local unions acted as agents of SEIU in submitting false claims for payment. When allegations "describe some details of a generalized scheme, but they provide no details linking the[] defendants to the scheme[, s]uch allegations are insufficient under Rule 9(b)." *United Healthcare*, 848 F.3d at 1182. The Ninth Circuit has "consistently rejected False Claims Act claims based on [such] broad and conclusory allegations." *Id.* As such, the Second Amended Complaint must be dismissed.

### III.    This case should be dismissed with prejudice

Plaintiff already has had two opportunities to amend his complaint to state a viable False Claims Act claim.  The Second Amended Complaint was filed after a meet and confer at which the deficiencies in the First Amended Complaint were pointed out.  As such, the Second Amended Complaint should be dismissed with prejudice.  *See, e.g.*, *Cassity v. Fedloan Servicing*, 2022 WL 2110754, at *4 (D. Or. Apr. 28, 2022) (recommending dismissal with prejudice where plaintiff's first amended complaint failed to cure the initial deficiencies); *Carr v. Alvarez*, 2021 WL 6927466, at *6 (D. Or. Nov. 22, 2021) (recommending dismissal with prejudice where "[p]laintiff has been given multiple chances to state a claim and has failed to do so").

As stated above, the application of Rule 9(b) to False Claims Act cases is designed "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee*, 236 F.3d at 1018.  Plaintiff cannot plead a viable False Claims Act claim against SEIU International—because, among many other things, SEIU International would not have submitted or directed the submission of any claims for payment regarding local trust funds—so this case should be dismissed with prejudice.  "In fraud cases, leave to amend should not be granted if the amendment would be futile." *Diep v. Durst-Pro-USA, Inc.*, 2006 WL 1788175, at *3 (D. Or. June 23, 2006) (citing *Vess*, 317 F.3d at 1108).

### CONCLUSION

Plaintiff's Second Amended Complaint should be dismissed without leave to amend.

DATED:  July 5, 2022                          Respectfully submitted,

                                              By: *s/  Scott A. Kronland*
                                                      Scott A. Kronland

                                              SCOTT A. KRONLAND (*pro hac vice*)
                                              ALTSHULER BERZON LLP
                                              177 Post Street, Suite 300
                                              San Francisco, CA 94108
                                              Telephone: (415) 421-7151
                                              Facsimile: (415) 362-8064
                                              E-mail: skronland@altber.com
                                              Pronouns: he/him

                                              JASON M. WEYAND, OSB No. 014777
                                              TEDESCO LAW GROUP
                                              1316 NE Broadway Street, Unit A
                                              Portland, OR 97232
                                              Telephone: (866) 687-6015
                                              Facsimile: (503) 2109847
                                              E-mail: jason@tlglabor.com
                                              Pronouns: he/him

                                              *Attorneys for Defendant Service*
                                              *Employees International Union*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 3,252 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED:  July 5, 2022                          Respectfully submitted,

By: *s/  Scott A. Kronland*
     Scott A. Kronland

SCOTT A. KRONLAND (*pro hac vice*)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail: skronland@altber.com
Pronouns: he/him

JASON M. WEYAND, OSB No. 014777
TEDESCO LAW GROUP
1316 NE Broadway Street, Unit A
Portland, OR 97232
Telephone: (866) 687-6015
Facsimile: (503) 2109847
E-mail: jason@tlglabor.com
Pronouns: he/him

*Attorneys for Defendant Service*
*Employees International Union*

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2022, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to all ECF

participants.


DATED:  July 5, 2022                          Respectfully submitted,

                                              By: *s/  Scott A. Kronland*
                                                     Scott A. Kronland

                                              SCOTT A. KRONLAND (*pro hac vice*)
                                              ALTSHULER BERZON LLP
                                              177 Post Street, Suite 300
                                              San Francisco, CA 94108
                                              Telephone: (415) 421-7151
                                              Facsimile: (415) 362-8064
                                              E-mail: skronland@altber.com
                                              Pronouns: he/him

                                              JASON M. WEYAND, OSB No. 014777
                                              TEDESCO LAW GROUP
                                              1316 NE Broadway Street, Unit A
                                              Portland, OR 97232
                                              Telephone: (866) 687-6015
                                              Facsimile: (503) 2109847
                                              E-mail: jason@tlglabor.com
                                              Pronouns: he/him

                                              *Attorneys for Defendant Service*
                                              *Employees International Union*