**Kevin T. Lafky**, OSB#852633
klafky@lafky.com
**Erin C. Mee**, OSB#205514
omee@lafky.com
**Lafky & Lafky**
429 Court St. NE
Salem, OR 97301
Telephone: (503) 585-2450
Facsimile: (503) 585-0205
Of Attorneys for Plaintif

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| MARTIN G. CHILDS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION., SEIU Local 503<br>　　　　Defendant. | Case No. 6:20-cv-01610-MK<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**<br><br>**False Claims Act Qui Tam Whistle blower Claim 31 U.S.C. 3729-3733**<br><br>**Fed. R. Civ P. 12(b)(6)** |

## RESPONSE

Plaintiff responds to Defendant's motions to dismiss and requests that the Court deny Defendant's motions in their entirety for the reasons stated below. In the alternative, if the Defendant's motions are granted, Plaintiff asks this Court for leave to amend the Complaint.

## POINTS AND AUTHORITIES

Aeroplate Corp. v. Arch Ins. Co. 2006 WL 3257487  (E.D. Cal. Nov. 9, 2006)

Ashcroft v. Iqbal, 556 U.S. 662 (2009)

Balistreri v. Pacifica Police Dep't, 901 F.2d 696 (9th Cir. 1988)

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)

Casault v. One W. Bank FSB, 658 F. App'x 872 (9th Cir. 2016)

Dowd v. Int'l Longshoremen's Ass'n, AFL-CIO, 975 F.2d 779, (11th Cir. 1992)

 Petroleum Prod. Antitrust Litig, 906 F.2d 432 (9th Cir. 1990)

Universal Health Servs. Inc. v. United States, 579 U.S. 176 (2016)

Winter ex rel. U.S. v. Gardens Reg'l Hosp. & Med. Ctr., Inc., 953 F.3d 1108 (9th Cir 2020)

## Statutes

31 U.S.C. § 3729-3733

Fed. R. Civ. P 12(b)(6)

Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 15(a)

**Page 2 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**MEMORANDUM OF LAW**     **4**

    **SUMMARY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

    **ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

        *a. The standard for a Well-Pleaded complaint under rule 12(b)(6) is met by the Third Amended Complaint.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        *b. The requirements of the FCA and heightened standard for pleading fraud under rule 9(b) is met by the Third Amended Complaint* . . . . . . . . . . . . . . 9

        *c. The 12(b)(6) motion is not the appropriate procedural mechanism to test the Plaintiff's Theory of Agency between Defendants SEIU and* . . . . . . . . . 11

        *d. The Court should grant further leave to amend the complaint as an alternative to dismissal with prejudice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**CONCLUSION**     **14**

**MEMORANDUM OF LAW**

**INTRODUCTION AND FACTUAL SUMMARY**

The present action is a Third Amended Complaint filed on December 21, 2023. Plaintiff is bringing a Qui Tam Action alleging violation of 31 U.S.C. 3729-3733, also known as the False Claims Act, by SEIU international and it's affiliate Local 503 OPEU.  The complaint alleges that Local 503, working under the guidance and direction of it's parent organization SEIU, acted to defraud the government of Medicaid benefit funds and use them for their own personal benefit. There are several key transaction that were key to putting this complex plan into action. The first step was the establishment of a Training trust in 2013 (officially called the Oregon Homecare Worker's Benefit Fund, dubbed "the Training Trust" herein for ease of differentiation), followed by an lobbying effort to pass SB 1534, and then cemented by Defendant's acquisition of The Forum building in Portland using funds from SEIU's Homecare Benefit Fund Supplemental Trust. The Forum building housed a call center which then billed expenses to the Training trust that the Union fully controlled.

This complaint centers on the Trust that was improperly managed by the Defendant Local 503 to conceal improper use of Medicaid funds. Under the Agreement and declaration of Trust, there a plan for equal oversight of the trust expenditures between the State and the Defendant by way of a joint board of trustees in which five members represent the State and five represent the Union. However this was not the case. In reality, all of the trustees are affiliated with Local 503. In addition to being a clear breach of fiduciary duties the member beneficiaries as the trustee, Local 503 intentionally concealed its misuse of medicaid funds from the State by failing to implement the state oversight that was envisioned when Local 503 was awarded the contract to implement the mandatory training required by SB 1534. (TAC pp.4-5 p. 9, describing Brian

**Page 4 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Rudiger's lobbying effort followed by being named as executive director of the Training Trust) As such, the Agreement and Declaration of Trust that Executive Director Heather Conroy signed on behalf of Local 503 in October 2013 is a false certification to the state and federal government. The LM-2 disclosures filed by Local 503 from 2019 on that later reflect billing invoiced to the training trust do not reveal the true source of these funds: the Federal Medicaid Program.

The fraudulent scheme conceived by Local 503 in conjunction with SEIU international was the fruition of a multi stage process that played out over several years. The steps of the process can be summarized as follows: (1) pass a mandatory training bill for healthcare workers in the state legislature. (2) create a training trust that Local 503 exclusively controlled, (3) establish a call center within the Union, and (4) bill the training trust for the call center expenses. First, the Defendant lobbied for the passage of SB 1534 in Oregon, requiring mandatory training for Homecare workers. Then, a Training trust was established which contracted with the Defendant to operate a call center. The Defendant controlled both the call center and the trust and so was able to award itself the contract to provide call center work for the Training Trust. (TAC pp. 6, p. 12) in violation of the express provisions of the Trust Agreement. Expenses for operating the call center were billed to the Trust. The Union did so knowing that the payments from the trust contained state medicaid funds, and that this source of funds would be concealed on their annual LM-2 reports and remain effectively beyond State oversight. In a sign of how the union stage managed the process, the Training trust was created before SB 1534 was passed (it was established in 2013). The Training Trust and Call center contract was not subject to a standard RFP process, and the Forum building was purchased by the union before the contract to provide call center services was awarded to Local 503 by the Training Trust. (It was purchased in

Page 5 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

February 2019). *Id.*

This end result, a source of easily accessible medicaid revenue for Local 503, was achieved by creating the training trust that had the outward appearance of oversight from the state of Oregon, when in reality the entire board of trustees is comprised of Union staff members. The text of SB 1534 itself does not clarify who the mandatory training scheme would be carried out by. DHS already had the necessary infrastructure in place to carry out the program. Yet the contract was instead awarded to the Union's Training trust without an RFP process (TAC pp.5 p.9). By sidestepping the promised fiduciary oversight by the State, Local 503 could purchase a building that would house a Union controlled contact center using funds from the Homecare benefits supplemental trust, and then use the call center to bill the Training Trust for call center expenses. This allowed the Local 503 access to an income stream of state Medicaid funds under the guise of providing mandatory training for health care workers, without reflecting this accurately on their LM-2 disclosures. Having been established, the scheme is now effectively invisible to state and federal regulators. There is no oversight of Local 503's billing to the training Trust and Local 503's LM-2s do not reflect that it is being reimbursed for call center expenses with medicaid dollars. (TAC pp.10 p.20)

The LM-2 forms are important evidence for the plaintiff's allegations because these are the most detailed financial disclosures unions have to make about their expenditures to the Federal government. Local 503's LM-2 disclosures from 2019-2022 show a rapid increase of expenses billed to the Training Trust, which reflects the fraudulent scheme being implemented after the Call Center was established in the Forum Building. The LM-2s show $342,507 billed in 2019, $1,357,283 in 2020, $2,165,207 in 2021, and $3,444,349 in 2022. (TAC pp. 11 p. 21, note that not all of these LM-2 disclosures are cited in the TAC, creating a potential need for further

**Page 6 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

amendments to clarify the allegations.) This rapid increase in billing to the Training Trust reflects how the lack of intended oversight allows the Call Center to be misused by local 503. These spending increases are not related to providing the mandatory training for healthcare workers under SB 1534. While the Plaintiff can not allege that *every* transaction billed to the Training Trust is necessarily fraudulent, rather, the Plaintiff is alleging that the Local 503 has gained access to this revenue stream without the knowledge or consent of the State legislature, creating a system that can be easily exploited to benefit Local 503.

The US Attorneys office was aware of the Third Amendment Complaint, reviewed it while the complaint was under seal, and reiterated their earlier decision by email that they would not intervene in the case while the seal was still in effect. Thereafter the seal was lifted by Plaintiff's motion. The US Attorney's office did not issue a formal letter with their re-affirmed decision not to intervene in the amended complaint. However, there was never any statement made by the US attorney that the complaint itself lacked merit. There is no basis to argue that the protocol was not followed under 31 U.S.C. § 3730(b)(2)

## ARGUMENT

*a. The standard for a Well-Pleaded complaint under rule 12(b)(6) is met by the Third Amended Complaint.*

*Twombly* is frequently cited as the judicial standard for evaluating a claim facing a motion to dismiss under rule 12(b)(6): "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions[.], Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007)*.* (internal citations omitted). To survive a motion to dismiss, a complaint must allege specific facts

**Page 7 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

necessary to evidence a claim for relief, assuming said facts are true. A court's ruling on a motion brought under 12(b)(6) must adhere to this assumption, notwithstanding a Judge's skepticism whether said facts could, in fact, be proven to the extent necessary. *Id.* at, 556 and 1965. "The court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor." Aeroplate Corp. v. Arch Ins. Co., No. CVF061099AWISMS, 2006 WL 3257487, at *5 (E.D. Cal. Nov. 9, 2006) (internal citation omitted).

    The present Third Amended Complaint should not be dismissed at this stage because it outlines a series of specific events that were part of the fraudulent scheme, for which the Plaintiff has substantial documentary evidence. One event in particular serves as the origin of the scheme to divert Federal benefits toward a manifestly unlawful purpose: this was the formation of the Training Trust in anticipation of a State contract to provide mandatory training. (TAC pp.10) There is enough specificity as to the time, date, and location of this and other events that constitute this long running scheme to make out colorable claim for relief under the FCA. The second part of the scheme, the acquisition of the Forum Building to serve as a Union call center is also well documented and was done in anticipation of being awarded a contract by the Union controlled Training Trust. *Id.* The fraudulent transactions that constitute the fruits of this scheme are reflected in the LM-2 disclosures filed by Local 503 (TAC pp. 11 p.21) which billing to the affiliated Training trust. This was a trust fund established to coordinate mandatory home care services training using medicaid benefits. (TAC pp.6) Without oversight by the state, it is impossible to verify if the invoices from the Defendant operated call center are valid uses of state funds authorized by SB 1534. Under the established legal standard "A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set

Page 8 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

of facts in support of his claim which would entitle him to relief." *Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)*. Here, the plaintiff sets out to prove that the union intentionally misappropriated trust funds through a scheme that utilized a Training Trust that was certified as having state oversight even though it did not.

*b. The requirements of the FCA and heightened standard for pleading fraud under rule 9(b) is met by the Third Amended Complaint*

Claims for relief under the False Claims Act are subject to the heightened pleading standard for fraud under rule 9(b). However the Ninth Circuit has observed "The Supreme Court has consistently refused to accept a rigid, restrictive reading of the FCA, and has cautioned courts against adopting a circumscribed view of what it means for a claim to be false or fraudulent." *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1116 (9th Cir. 2020) (internal citations and quotations omitted). In the present case, Defendant's agent established a Training Trust that purported to have a board of trustees made up of both state and union overseers for the purpose of obtaining an undisclosed stream of medicaid revenue. They then billed the Training Trust for call center expenses at a training center that it controlled. These expenses represented medicaid funds being diverted into potentially unauthorized purposes that benefitted the union and was not envisioned by the legislation that created the training program.

The present Complaint meets the rule 9(b) standard with sufficient specificity of the circumstances constituting fraud or mistake: the Union, acting by and through Heather Conroy, misrepresented that the Training Trust would have state oversight and thereafter used this trust to obtain medicaid funds to benefit the organization. The Plaintiff has identified the trust document, signed by Heather Conroy in 2013, and has identified the LM-2s showing expenses subsequently

**Page 9 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

billed to the training trust by Local 503, Plaintiff has also identified the call center, located at the Forum Building, that the Defendant used to bill the training trust and has OHCC meeting transcripts showing how the union avoided the standard RFP process to establish the statutory training program. (TAC pp.4 p.9) The proper mechanism to test Plaintiff's allegations is the summary judgment threshold under FRCP 56, rather than a motion to dismiss under Rule 12B(6). The Plaintiff's evidence must be produced and examined in order to determine if he makes the burden of a factual showing on each element of his claim. Plaintiff's former role as an insider in Defendant's organization has enabled him to make this information public as a whistle blower by being privy to statements by the Local 503 executive director in private meetings, and this has also allowed him to observe how the scheme was coordinated and aided by SEIU international which instructed its local branches to adopt the scheme.

The Supreme Court has held that "the False Claims Act encompasses claims that make fraudulent misrepresentations, which include certain misleading omissions." *Universal Health Servs. Inc. v. United States*, 579 U.S. 176, 186–87, 136 S. Ct. 1989, 1999, 195 L. Ed. 2d 348 (2016); the present allegations concern exactly the sort of tacit conduct and misleading omissions conceived of by *Universal Healt Servs. Inc*. In this case, the Defendant established a trust that purported to have government oversight, and used its influence on the OHCC to ensure that a government contract was awarded to the trust that it controlled. Then, under the guise of a statute designed to provide mandatory training for home care workers, Local 503 was able to bill expenses from its call center to the trust in a manner devoid of any government oversight. This allegation resembles the "implied false certification theory" outlined in *Universal Health Servs*. Plaintiff's complaint alleges that in 2019, SEIU, by and through Local 503, attempted to acquire The Forum Building in Portland Oregon using a trust made up exclusively of government

**Page 10 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

benefits paid to members. *TAC pp. 6* The "implied false certification" is that Local 503, acting on behalf of its parent organization, certified to the Government that the benefits obtained would be used for the purpose authorized by statute and that there would be State trusteeship over the trust that administered the benefits. Instead, the money was used to enrich Local 503 at the expense of the State and the Federal Government.

    *c. The 12(b)(6) motion is not the appropriate procedural mechanism to test the Plaintiff's Theory of Agency between Defendants SEIU and Local 503.*

    The Plaintiff Alleges that the Defendant SEIU was acting as the principal vis a vis its local branch organizations in the scheme to defraud the government, specifically with respect to the scheme to establish the call center billing scheme under SB 1534. The Eleventh Circuit has held that the lack of a legal obligation by the agent branch on the part of the Principal does not preclude an agency relationship, nor does the lack of legal capacity of the Principal to carry out the desired action. *Dowd v. Int'l Longshoremen's Ass'n, AFL-CIO, 975 F.2d 779, 784 (11th Cir. 1992).* Conspiracy can be alleged as tacit in nature and can be inferred from the circumstances in the absence of a formal agreement. The Ninth Circuit has weighed in on the issue of tacit conspiracy, holding that if the plaintiff's asserted interpretation of the facts is "reasonable" enough to clear the summary judgment threshold, despite a Judge's opinion that the defendant's explanation is equally or even more likely, the case should continue. *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig., 906 F.2d 432, 438 (9th Cir. 1990).* Plaintiff's threshold for a defense to a rule 12(b)(6) motion is even lower; the court accepts the alleged facts as true for the purposes of the motion, while rejecting conclusory interpretations of said facts. *Ashcroft v. Iqbal, 556 U.S. 662, 680–81, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009).*

**Page 11 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Defendant's motion does not apply the appropriate standard in asking the Court to find a lack of sufficient factual specificity for the conspiracy. Plaintiff has alleged that the benefits scheme was devised by Local 775 in Washington, and later duplicated by Local 503. In the process the scheme received the express approval and authorization of Defendant SEIU, the parent organization. The Parent organization and the local branch interfaced through intermediaries who had contacts in both organizations, such as Heather Conroy, the chair of the Local 503 Steering Committe and Melissa Unger who consulted with SEIU international's lawyers. (TAC pp.7 p.13) Whether the Plaintiff's characterization of Defendant's actions meets the requisite threshold of persuasiveness to survive summary judgment is not the matter at issue, as Plaintiff should be allowed to conduct discovery to assist in that determination. Accepted as true, Plaintiff has alleged that Medicaid benefits were unlawfully transferred to defendant under false assurances of State oversight, under the supervision and approval of the SEIU international, who helped coordinate the implementation of a similar scheme at each of the locals. (TAC pp. 4-5)

*d. The Court should grant further leave to amend the complaint as an alternative to dismissal with prejudice*

FRCP 15(a) mandates that a plaintiff should be granted leave to amend a complaint as justice so requires. "Leave to amend should be denied "only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Casault v. Fed. Nat. Mortg. Ass'n, 915 F. Supp. 2d 1113, 1125 (C.D. Cal. 2012), aff'd sub nom. Casault v. One W. Bank FSB, 658 F. App'x 872 (9th Cir. 2016).* The standard for allowing leave to amend is generous, with the Ninth Circuit holding leave should be granted if it can "conceive of facts" that

would render the plaintiff's claim viable. *Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 701 (9th Cir. 1988)*.

The present complaint outlines a complicated scheme to commit fraud that was organized over several years. Since the complaint has been filed, Plaintiff has had time to analyze documents in his possession with counsel and refine his allegations, with the result that some of the allegations stated in the third amended complaint have taken on a greater salience in the scheme being outline. The key distinction is that rather than focusing primarily on the Forum Building purchase in downtown Portland as the key specific fraudulent transaction giving rise to the complaint, Plaintiff now points to the misrepresentation in the Trust Agreement and the concealed medicaid revenue flowing to the union that is reflected on the LM-2 disclosures. Also key to the complaint the legislative process which saw the Local 503 subvert the Legislature and evade state oversight by ensuring that the State training contract under SB 1534 was awarded to an entity that it wholly controlled. The key false certification is actually in Trust Agreement stating that the board of trustees will be split between State and Union membership. The receipts of individual fraudulent transactions, such as they exist, are the LM-2 forms filed by Local 503 reflecting Union Call center expenses billed to the Trust.

If the Court holds that Plaintiff has not carried his burden under Rule 12(b)(6) and Rule 9(b), the Court should allow Plaintiff leave to amend the Complaint. The Plaintiff has alleged a complicated and multi faceted fraudulent scheme and is in possession of the documents needed to establish proof on each element. Further leave to amend would allow the Plaintiff to streamline and clarify the Third Amended Complaint to more clearly state each phase in the fraudulent claim and what evidence the Plaintiff has in support on each portion of the allegations.

**Page 13 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

## CONCLUSION

For the forgoing reasons, the Court should deny Defendant's motion or in the alternative grant the plaintiff leave to amend the complaint.

DATED this 13th day of September, 2023.

> /s/ Erin C. Mee
> Kevin T. Lafky, OSB#852633
> klafky@lafky.com
> Erin C. Mee, OSB#205514
> emee@lafky.com
> LAFKY & LAFKY
> 429 Court St. NE
> Salem, OR 97301
> Tel. (503) 585-2450
> Of Attorneys for Plaintiff