NOAH WARMAN, OSB No. 172513
TEDESCO LAW GROUP
1316 NE Broadway Street, Unit A
Portland, OR 97232
Telephone: (866) 687-6015
Facsimile: (503) 210-9847
E-mail: noah@tlglabor.com
Pronouns: he/him

*Attorneys for Defendant Local 503*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MARTIN G. CHILDS,<br><br>    Plaintiff,<br> v.<br><br>LOCAL 503, OPEU, and SERVICE EMPLOYEES INTERNATIONAL UNION (SEIU),<br><br>    Defendant.<br>_____ | Case No. 6:20-cv-01610-MK<br><br>**DEFENDANT LOCAL 503's REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |

## INTRODUCTION

Plaintiff's response to Local 503's motion to dismiss his Third Amended Complaint does not rebut Local 503's motion. To the contrary, his response only strengthens it. After three rounds of amendments, Plaintiff has again failed to identify anything Local 503 did that arguably could fit within the bounds of the False Claims Act. His case should be dismissed with prejudice.

# ARGUMENT

### I. Yet again, Plaintiff does not identify a single demand for payment that could violate the False Claims Act.

As both SEIU International and Local 503 have noted time and again, a "claim within the meaning of the False Claims Act is a demand upon the Government for the payment of money or transfer of property." *United States v. Howell*, 318 F.2d 162, 164 (9th Cir. 1963). As the Supreme Court noted in *United States v. McNinch*, 356 U.S. 595, 599 (1958), "[T]he conception of a claim against the government normally connotes a demand for money or for some transfer of public property." (quoting *United States v. Tieger*, 234 F.2d 589, 591 (3rd Cir. 1956)). To qualify as a "claim" for purposes of the False Claims Act, a statement must be "made with the purpose and effect of inducing the Government *immediately* to part with money." *United States v. Neifert-White Co.*, 390 U.S. 228, 230 (1968) (emphasis added). Thus, as a threshold matter, Plaintiff must identify at least a single instance where Local 503 made a demand for payment to the government. To this day, despite many opportunities to amend his complaint to allege even a single such demand, he has not identified even one.

In his *third* amended complaint Plaintiff asserts that Local 503 attempted to defraud the government of Medicaid funds. Plaintiff's Response to Defendant's Motion to Dismiss (Response), at 4. To accomplish this goal, Local 503 created the Oregon Homecare Worker's Benefit Fund, also known as the Training Trust, in 2013. *Id.* Local 503 then successfully lobbied the Oregon legislature to enact legislation, SB 1534. *Id.* Then Local 503 acquired a building in Portland using funds from a second trust, the Homecare Benefit Fund Supplemental Trust. *Id.* That building housed a call center. *Id.* That call center billed expenses for its services to the Training Trust. *Id.*

Plaintiff is frequently sloppy with nomenclature, muddling which Trust or which Defendant is at issue, so it is not always clear which entity he is referencing. He alleges that Local 503 improperly managed at least one of the Trusts to "conceal improper use of Medicaid funds." *Id.* Pursuant to the documents creating that Trust – which one is unclear – a joint board of ten trustees, five representing the State of Oregon, five representing Local 503, oversee the Trust's expenditures. *Id.* He claims that all ten trustees, however, are affiliated with Local 503. *Id.*

Plaintiff contends that Local 503 intentionally concealed its misuse of Medicaid funds from the State by failing to implement state oversight when it received a contract to provide workers with training required by SB 1534. *Id.* Note that this is as close as Plaintiff comes to claiming that Local 503 received funds from Medicaid, but to be clear, it is *Local 503's* alleged failure to implement *State oversight* that allegedly violates the FCA, not that Local 503 itself ever requested or received any Medicaid funds. He goes on to claim that Local 503's LM-2 forms *"reflect billing invoiced from Local 503 to the Training Trust"* but the source of the funds was the "Federal Medicaid Program." Response at 5.

Plaintiff summarizes Local 503's allegedly "fraudulent scheme" as "a multi stage process that played out over several years": "(1) pass a mandatory training bill for healthcare workers in the state legislature, (2) create a training trust that Local 503 exclusively controlled, (3) establish a call center within Local 503, and (4) *bill the training trust for the call center expenses*." *Id.* (emphasis added). His litany of gripes includes the alleged unwillingness of the State of Oregon to enforce its own laws, for he asserts that "There is no oversight of Local 503's billing to the training Trust …" Response at 6. He goes on to claim that Local 503's LM-2 forms reveal a

"rapid increase in billing to the Training Trust …" *Id.* The best evidence Plaintiff has of any transactions that could conceivably violate the FCA are exchanges between Local 503 and a Trust: "The receipts of individual fraudulent transactions, such as they exist, are the LM-2 forms filed by Local 503 reflecting Union Call center expenses billed to the Trust." Response at 13.

Plaintiff has not cited a single instance where Local 503 requested payment from the state or federal government. To the contrary, Plaintiff could not be clearer or more repetitive that all demands for payment went from Local 503 to a Trust, not the government. He emphasizes this point at least eight separate times in responding to Local 503's motion to dismiss:

- Local 503's "fraudulent scheme" was so Local 503 "could bill the training trust for the call center expenses." Response at 5.

- "Expenses for operating the call center were billed to the Trust." *Id.*

- Local 503 "could purchase a building that would house a Union controlled contact center using funds from the Homecare benefits supplemental trust, and then use the call center to bill the Training Trust for call center expenses." Response at 6.

- "There is no oversight of Local 503's billing to the training Trust …" *Id.*

- "This rapid increase in billing to the Training Trust …" Response at 7.

- Local 503 "then billed the Training Trust for call center expenses …" Response at 9.

- "Local 503 was able to bill expenses from its call center to the trust …" Response at 10.

- "The receipts of individual fraudulent transactions, such as they exist, are the

        LM-2 forms filed by Local 503 reflecting Union Call center expenses billed to the Trust." Response at 13.

Beginning with his original complaint and continuing throughout three subsequent amended complaints Plaintiff has failed to state a claim under the FCA, because not one of the transactions at issue concerns a demand for payment from Local 503 to the government. To the contrary, his response makes amply clear all such demands went to a private Trust. That alone disposes of Plaintiff's claims. That it took three amendments to get to this point should lead the Court to deny Plaintiff of a fourth attempt to restate his FCA claim.

**II. Beyond failing to allege a demand for payment, Plaintiff does not identify a single fraudulent act on the part of the parties that actually received government funds.**

A viable FCA claim must not only allege a demand for payment but that the demand be false or fraudulent, meaning that the defendant failed to provide some or all of the goods or services for which it demanded payment from the government. To make out a claim for violation of 31 U.S.C. §3729(a)(1)(A), a plaintiff "must allege: '(1) *a false statement or fraudulent course of conduct*, … causing, (4) the government to pay out money or forfeit moneys due.'" *Winter ex rel. United States v. Gardens Regional Hosp.*, 953 F.3d 1108, 1114 (9th Cir. 2020) (quoting *United States ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 899 (9th Cir. 2017)), emphasis added. Thus, Plaintiff must allege with specificity facts showing both that the Trusts were mere puppets of Local 503 and that the Trusts defrauded the government. Even assuming for the sake of argument that Local 503 controlled the Trusts, his complaint must be dismissed because Plaintiff has never alleged that the Trusts themselves failed to provide the goods or services for which they were paid by the government.

If the Trusts did provide the goods and services they contracted with the State of Oregon to provide and then received payment at the agreed-upon price, then there can be no violation of the FCA. The government received and paid for the very thing it asked the Trusts to do. There is no falsity or fraud. The money paid to the Trusts properly became their property. It ceased to be public funds.

Plaintiff clearly does not like what the Trusts did with their money. He takes issue with the agreements and the financial exchanges between the Trusts and Local 503. Nevertheless, whether Local 503 provided goods or services to the Trusts for which it received payments from the Trusts, or vice versa, concern financial exchanges between private parties that fall well outside the scope of the FCA.

If the transactions between the Trusts and Local 503 were in any way improper – *e.g.*, payments not authorized by the documents that created the Trusts or payments for goods or services never actually provided – then someone with standing to act on the Trusts' behalf could file suit for alleged breach of fiduciary duty or breach of contract. Plaintiff does not allege that he is a beneficiary, a participant, or a trustee. In the end, what Plaintiff claims to be a cause of action under the FCA actually alleges breaches of fiduciary duty or violations of contracts that he lacks standing to advance.

## CONCLUSION

For the foregoing reasons as well as those set forth in its motion to dismiss Plaintiff's third amended complaint, Plaintiff's claims against Local 503 should be dismissed with prejudice.

Respectfully submitted,

By: */s/ Noah Warman*
      Noah Warman

NOAH WARMAN, OSB No. 172513
TEDESCO LAW GROUP
1316 NE Broadway Street, Unit A
Portland, OR 97232
Telephone: (866) 687-6015
Facsimile: (503) 2109847
E-mail: noah@tlglabor.com
Pronouns: he/him

*Attorneys for Defendant Local 503*

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contain 1,550 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED:  September 27, 2023           Respectfully submitted,

By: */s/ Noah Warman*
      Noah Warman

NOAH WARMAN, OSB No. 172513
TEDESCO LAW GROUP
1316 NE Broadway Street, Unit A
Portland, OR 97232
Telephone: (866) 687-6015
Facsimile: (503) 2109847
E-mail: noah@tlglabor.com
Pronouns: he/him

*Attorneys for Defendant Local 503*

## CERTIFICATE OF SERVICE

I hereby certify that on Wednesday, September 27, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants.

Respectfully submitted,

By: */s/ Noah Warman*
　　Noah Warman